* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Homick, with minor modifications.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff is Sharon C. Falls.
2. Defendant is Eastern Correctional Institution, a facility of the North Carolina Department of Correction.
3. On November 13, 2008, Corvel Corporation was the third-party administrator.
4. Defendant regularly employed three or more employees. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
6. An employee-employer relationship existed between plaintiff and defendant on November 13, 2008.
7. Plaintiff's compensation rate is $440.01.
8. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 a. Stipulated Exhibit 1: Industrial Commission Forms and Filings (Pages 1-23);
 b. Stipulated Exhibit 2: Plaintiff's Medical Records (Pages 24-33); and
 c. Stipulated Exhibit 3: Recorded Statement (Pages 34-52).
9. The issues for determination by the North Carolina Industrial Commission are as follows: *Page 3 
 a. Whether plaintiff sustained an injury by accident arising out of and in the course and scope of her employment on November 13, 2008?
 b. To what benefits, if any, is plaintiff entitled?
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 55 years old. Plaintiff graduated from high school and has taken some continuing education classes through her employment.
2. On November 23, 2002, plaintiff commenced work for defendant as a Correctional Sergeant. Her duties included supervising inmates and staff, evaluating performance and responding to incidents, as necessary.
3. On November 13, 2008, plaintiff was in the Medical Department when she heard an emergency "Code Four" call. A "Code Four" indicates a serious situation in which an officer or staff member is in danger and needs assistance. Plaintiff was aware that this call was made by an elderly case manager who had no means of defense.
4. Plaintiff responded immediately and ran as fast as she could to provide assistance. Plaintiff turned toward the right down a hallway and took a misstep, landing sideways on the outer side of her left foot. This caused her left knee to torque, turning outward. Plaintiff heard a loud pop and experienced what she felt to be a tear in her leg. Plaintiff's left leg gave out, causing her to dip towards the floor. Despite this, plaintiff hobbled towards the emergency in order to provide assistance. *Page 4 
5. Upon arrival at the scene of the emergency, plaintiff learned that the inmate had been subdued. Plaintiff hobbled to the office of her supervisor, Lieutenant Warner, to inform him of the accident before presenting to the facility's nurse.
6. The nurse wound an Ace bandage around plaintiff's knee, provided plaintiff with Ibuprofen, and referred plaintiff to Med Center 1 in Greenville for evaluation and treatment.
7. The following day, November 14, 2008, plaintiff presented to Med Center 1, where she was treated by Heather Hanes, a certified nurse practitioner. Ms. Hanes initially diagnosed plaintiff with a sprain/strain of her left knee, but after diagnostic testing, revised the diagnosis to a meniscal tear. Ms. Hanes then referred plaintiff to an orthopedic specialist for further treatment. Plaintiff was restricted to light duty during this time.
8. After conservative treatment failed to provide relief, plaintiff presented to Dr. Eddie Powell, an orthopedic surgeon, on December 30, 2008 with complaints of continued left knee pain, which persisted since her November 13, 2008 work injury. Dr. Powell recommended a left knee arthroscopy, which was performed on January 9, 2009. Specifically, Dr. Powell performed a meniscectomy on the medial and lateral menisci, shaving the articular cartilage and performing a synovectomy.
9. On February 19, 2009, Dr. Powell noted that plaintiff had progressed well and, as she had full range of motion, Dr. Powell released plaintiff to return to work without restrictions.
10. Dr. Powell testified to a reasonable degree of medical certainty that plaintiff's work injury on November 13, 2008, caused the tear in her left knee that required the arthroscopic surgery on January 9, 2009.
11. Plaintiff testified that, prior to her November 13, 2008 work injury, she had not had any problems with her left knee. *Page 5 
12. Plaintiff was unable to work from January 9, 2009, the date of her left knee surgery, to February 23, 2009, when she returned to work for defendant.
13. Although plaintiff returned to work for defendant on February 23, 2009, plaintiff has continued to experience ongoing pain in her left knee, which Dr. Powell opined was normal. As such, the Full Commission finds that there is a substantial likelihood that plaintiff will need future medical treatment for her left knee, as a result of her November 13, 2008 work injury.
14. Defendant noted that plaintiff did not report a misstep while running on the Form 18 Employee's Notice of Accident toEmployer, in her recorded statement, or in her early medical records, although she did so subsequently. Based on plaintiff's testimony at the hearing and the subsequent reporting of the misstep, the Full Commission finds plaintiff's testimony to be credible and the omission reasonable based upon the totality of the circumstances.
15. Plaintiff testified that in the five years she has worked for defendant, there have not been more than four emergency "Code Four's" on her shift, including the one at issue in the instant case. Furthermore, plaintiff testified that since she has worked for defendant at the Eastern Correctional Institution, there were only three or four instances in which she had to respond to an emergency in a full sprint.
16. Although plaintiff was expected to respond to "Code Four" emergencies, the Full Commission finds that they occurred so infrequently and were not sufficiently predictable so as to become part of plaintiff's normal job duties and were, thus, unusual and unexpected.
17. The Full Commission further finds that on November 13, 2008, plaintiff took a misstep, landing sideways on the outer side of her left foot, causing her left knee to torque and pop, which constituted an unlooked for and untoward event that was an unexpected interruption *Page 6 
of the work routine and thereby, the introduction of unusual conditions likely to result in unexpected consequences.
18. At the time of the hearing before the Deputy Commissioner, plaintiff had not yet received a permanent partial disability rating to her left knee.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An "accident" is an unlooked for and untoward event not expected or designed by the employee. Harding v.Thomas Howard Co., 256 N.C. 427, 124 S.E.2d 109 (1962). An injury must meet the standards of an injury by accident in order to be compensable. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather, involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Id. Plaintiff's injury to her left knee, occurring when she landed on the left side of her foot, causing her leg to turn outward as she ran to respond to an emergency call on November 13, 2008, constituted an unlooked for and untoward event that was an unexpected interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
2. On November 13, 2008, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant, resulting in a left knee injury. N.C. Gen. Stat. § 97-2(6).
3. As a direct and proximate result of plaintiff's compensable injury by accident on November 13, 2008, plaintiff was unable to earn the same or greater wages as she was earning in *Page 7 
the same or any other employment from January 9, 2009, the day of plaintiff's left knee surgery, through February 23, 2009, when plaintiff returned to work for defendant. As a result, plaintiff is entitled to receive temporary total disability compensation at the rate of $440.01 per week for this period. N.C. Gen. Stat. § 97-29.
4. There is a substantial risk that plaintiff will need future medical treatment for her left knee related to the November 13, 2008 compensable injury by accident. N.C. Gen. Stat. § 97-25.1; Adams v. Frit Car, Inc.,185 N.C. App. 714, 720, 649 S.E.2d 651, 655 (2007);Reinninger v. Prestige Fabricators, Inc.,136 N.C. App. 255, 523 S.E.2d 720 (1999); Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
5. Therefore, and as a direct and proximate result of plaintiff's compensable injury by accident on November 13, 2008, plaintiff is entitled to all medical expenses incurred or to be incurred for her left knee injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, defendant shall pay ongoing temporary total disability compensation to plaintiff at the rate of $440.01 per week from January 9, 2009, the day of plaintiff's left knee surgery, through February 23, 2009, when plaintiff returned to work for defendant. *Page 8 
2. Defendant shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to her left knee for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's counsel and shall be paid by defendant as follows: twenty-five percent (25%) of the compensation which has accrued shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This the ___ day of December, 2010.
 S/______________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_________________ DANNY LEE McDONALD COMMISSIONER *Page 1